46 F.3d 1129
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
George WILSON, III, a/k/a Charles L. Gaston, Defendant-Appellant.
 No. 94-5143.
 United States Court of Appeals, Fourth Circuit.
 Submitted Dec. 20, 1994.
Decided Jan. 12, 1995.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge; Albert V. Bryan, Jr., Senior District Judge. (CR-93-461-A)
 Hunt L. Charach, Federal Public Defender, C. Cooper Fulton, Assistant Federal Public Defender, Charleston, WV, for Appellant. Helen F. Fahey, United States Attorney, John T. Martin, Assistant United States Attorney, Alexandria, VA, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant, George Wilson, III, appeals his conviction on charges that he possessed with intent to distribute 14.1 kilograms of phencyclidine (PCP), 21 U.S.C. Sec. 841(a)(1) (1988), 21 U.S.C.A. Sec. 841(b)(1)(A) (West Supp.1994). Wilson argues on appeal that the district court erred in failing to suppress the PCP seized from a suitcase he was carrying and that his trial counsel was ineffective. Finding no error, we affirm the judgment and sentence below in all respects.
 
 
 2
 * On November 22, 1993, Drug Enforcement Agents (DEA) were at the National Airport in Washington, D.C. monitoring flights from Los Angeles, a city considered as a source of drugs for the D.C. area. Wilson arrived on a flight from Los Angeles and caught Agent Oliff's attention as he de-planed. Oliff testified at the suppression hearing that Wilson walked very stiff with his hands down to his sides, and looked around repeatedly. Oliff concluded that Wilson appeared nervous and decided to follow him. Wilson used a restroom and then proceeded to the baggage claim area. Oliff watched as Wilson stood approximately fifteen to twenty feet away from the baggage carousel. Wilson eventually walked up to the carousel and removed a black hard-shell suitcase.
 
 
 3
 Oliff followed Wilson outside, approached him, presented Wilson with his credentials, and asked Wilson if he could speak with him. Wilson agreed, dropped the suitcase on the sidewalk, and walked toward Oliff. Oliff then asked what flight Wilson was on, why he was in D.C., and where he was going. Wilson replied that he had flown in from Los Angeles to visit his girlfriend. When questioned further, Wilson could not remember where his girlfriend lived or her phone number. Wilson then stated that his girlfriend was in D.C. visiting her mother. Wilson later contradicted himself, when he stated that his girlfriend's mother was in Los Angeles.
 
 
 4
 Oliff then asked Wilson if he could see some identification. Wilson showed Oliff an identification card in the name of Charles Gaston. As Wilson removed the card from his wallet, Oliff noticed that Wilson possessed a large amount of cash. Oliff asked Wilson if he was employed, and Wilson said he was not, but won the money gambling in Las Vegas. Oliff then asked whether Wilson was carrying drugs or guns; Wilson replied he was not and agreed to let Oliff search him. As Oliff did this, he noticed Wilson was carrying a pager.
 
 
 5
 Oliff next asked Wilson if the suitcase he set on the sidewalk was his. Wilson stated that he was not sure. Oliff noticed during this conversation that Wilson would not make eye contact with him. Agents Jacobsen and Beatley subsequently approached Wilson and Oliff. Beatley examined the suitcase and found that the name on the suitcase's claim ticket was Charles Dent. Wilson stated that the bag must not be his because his name was Charles Gaston. When asked, Wilson could not produce a claim ticket. Wilson stated that a friend whose name he could not remember purchased his plane ticket and checked in the suitcase for him.
 
 
 6
 Oliff then asked Wilson if he would like to take this suitcase back because it was not his. Wilson then moved toward the terminal, but away from the suitcase. When asked again about the suitcase, Wilson responded that it was not his, and he was not going to touch the suitcase. Wilson then stopped, leaned against the airport wall, and stared at his feet. Wilson then stated that the suitcase belonged to a friend, but he did not remember who the friend was. Agent Jacobsen then asked Wilson if he really had a suitcase on this flight, to which Wilson responded, "no." Jacobsen asked Wilson if he stole the suitcase, and Wilson replied that he did.
 
 
 7
 At this point, the DEA agents had questioned Wilson for approximately fifteen minutes. Oliff then advised Wilson that he was being detained with the suitcase for suspicion of criminal activity. Oliff escorted Wilson to the baggage claim office and summoned the canine unit. Agent Jacobsen waited with Wilson for forty minutes until the canine unit arrived. Jacobsen asked Wilson if he could see his identification. As Wilson handed Jacobsen his wallet, a metal Samsonite luggage key fell to the floor. Jacobsen asked Wilson if that was the key to the black suitcase. Wilson responded that he did not want to elaborate on that. It was later discovered that the key fit the black suitcase. Jacobsen retained Wilson's wallet and read Wilson his Miranda[1] rights, but he did not tell Wilson that he was under arrest.
 
 
 8
 Agent Oliff placed the black suitcase in a group of other bags. When the canine unit arrived, the narcotics-trained dog alerted to the black suitcase. Oliff told Wilson he was under arrest, and proceeded to get a warrant to open the suitcase. The agents retrieved 14.1 kilograms of liquid PCP from the suitcase. As part of the probable cause for the warrant, Oliff included the fact that a narcotics-trained dog had alerted to the bag. It was later discovered at the suppression hearing, however, that the narcotics-trained dog was not trained to alert to the presence of PCP.
 
 II
 
 9
 Wilson argues that he was unlawfully arrested when the agents escorted him to the baggage claim office to await the narcotics unit. Wilson apparently concedes that everything up to that point was either a consensual encounter or an investigative detention based upon a reasonable articulable suspicion of criminal activity. See Florida v. Royer, 460 U.S. 491, 497 (1983). He argues, however, that he was later under custodial arrest because the agents moved him to a different location, retained possession of his wallet, and guarded the exit to prevent his departure. Wilson argues that the agents did not possess probable cause for this arrest and, therefore, anything seized as a result must be suppressed. We reject this argument.
 
 
 10
 Wilson was held for an investigative detention rather than a custodial arrest. Where a law enforcement officer has a reasonable articulable suspicion that the person has committed or is about to commit a crime, he may detain that person. Royer, 460 U.S. at 498. The length of the detention must be no longer than is necessary to effectuate the purpose of the stop. Id. at 500. Only when the actions of the police exceed the bounds of reasonableness does the seizure become an arrest that must be supported by probable cause. See United States v. Manbeck, 744 F.2d 360, 376 (4th Cir.1984), cert. denied, 469 U.S. 1217 (1985).
 
 
 11
 When the agents decided to detain Wilson for the purpose of further investigation, they possessed reasonable suspicion that Wilson was engaged in criminal activity. Wilson provided multiple evasive and contradictory responses to the agents' questions, appeared nervous at each stage of the questioning, and refused to acknowledge ownership of the suitcase he was carrying. In fact, the last thing he told the agents was that he stole the suitcase from the baggage claim area. Under these circumstances, the agents were amply justified in detaining Wilson. Furthermore, Wilson's forty-minute detention was temporally reasonable. See United States v. Alpert, 816 F.2d 958, 964 (4th Cir.1987).
 
 III
 
 12
 Wilson also argues that his trial counsel was ineffective for failing to fully develop the argument that the warrant allowing the agents to open the suitcase was not supported by probable cause. Wilson argues that it became apparent at the suppression hearing that the narcotics-trained dog that alerted to the suitcase was not trained to alert to the presence of PCP. According to Wilson, therefore, the fact that the dog alerted to the suitcase could not support a finding of probable cause that there was contraband in the suitcase.
 
 
 13
 We reject this argument because we will not normally adjudicate a claim of ineffective assistance on direct appeal. United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3717 (U.S.1992). Such a claim is more appropriately raised in a habeas motion where an adequate record can first be established in the district court. Id.
 
 
 14
 Wilson's conviction is accordingly, affirmed.[2] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [2]
 We also grant Wilson's motion to file a pro se supplemental brief and have considered his brief in disposing of the appeal